


ROBAINA & KRESIN PLLC
One E. Camelback Road, Suite 300
Phoenix, Arizona 85012
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
dck@robainalaw.com
David C. Kresin (019858)
Attorneys for Plaintiff

JAN 27 2010

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CHERYL BRUMBAUGH,

  Plaintiff,

vs.

LEBARON & CARROLL, LLC;
DEWIGHT MASSEY and JANE DOE MASSEY, husband and wife;

  Defendants.

No. CV2010-002871

**COMPLAINT**

(Employment Discrimination; Denial of Medical Leave; Assault; Battery)

Plaintiff Cheryl Brumbaugh for her Complaint alleges as follows:

1. Cheryl Brumbaugh is a single woman who at all relevant times was a resident of Maricopa County, Arizona.

2. Upon information and belief, Defendant LeBaron & Carroll, LLC ("L&C") is an Arizona limited liability company doing business in Maricopa County, Arizona.

3. Upon information and belief, Defendant Dewight Massey ("Massey") is a married man who at all relevant times was a resident of Maricopa County, Arizona.

4. Upon information and belief, Jane Doe Massey is married to Massey and all actions by Massey were taken on behalf of their marital community.

5. Upon information and belief, at all relevant times, Massey was a partner, owner and/or officer in L&C, and he acted as a proxy or alter ego of L&C in engaging in the conduct described herein.



6. Upon information and belief, at all relevant times, L&C has employed more than 50 employees.

7. The events giving rise to these causes of action occurred in Maricopa County, Arizona.

8. This Court has jurisdiction over the parties and the claim alleged herein by virtue of A.R.S. § 12-123.

9. Venue is proper in this county pursuant to A.R.S. § 12-401.

10. Defendants hired Plaintiff in approximately November 2004 as an administrative assistant/office clerk.

11. In approximately May 2005, Defendants promoted Plaintiff into L&C's Commercial Lines Department, where she began working under the supervision of Massey.

12. Shortly thereafter, Massey began sexually harassing Plaintiff by engaging in offensive contact such as putting his hand on her legs, rubbing her shoulders, and holding her hand. Massey also made inappropriate personal comments and implicitly suggested to Plaintiff that he wished that they could have a romantic relationship. Massey engaged in the above conduct on a regular basis until Plaintiff's employment was terminated in June 2009.

13. At all times, Massey's sexually harassing conduct was unwelcome and subjectively offensive to Plaintiff.

14. Massey's conduct created a hostile work environment so severe and pervasive that it, along with other experiences, contributed to Plaintiff developing a severe depression in or before early 2009.

15. Plaintiff's depression substantially limited her ability to perform several major life activities including interacting with others, concentrating, and eating.

16. After Plaintiff was diagnosed with severe depression in early 2009, she was seeking regular medical and psychological care for her condition.

17. In early 2009, Plaintiff shared her diagnosis with Massey, L&C's Agency Manager Joann Mannino, and supervisor Wendy Rossi, and sought their assistance in obtaining time off to seek treatment and recover from flare-ups of her condition. The requested time off was a reasonable accommodation of her condition.

18. In 2009, Plaintiff occasionally missed work due to flare-ups of her condition and to seek treatment for her condition.

19. On June 21, 2009, Plaintiff suffered a flare-up of her condition, was incapacitated and missed work.

20. Later that day, Massey notified Plaintiff's sister Tammy Tolle that L&C intended to terminate Plaintiff's employment because she missed too much work.

21. On June 24, 2009, Massey met with Plaintiff and notified her that L&C decided to terminate Plaintiff's employment effective July 1, 2009 because of her condition and the resulting time off that she required to address it.

22. In that meeting, Massey told Plaintiff that the partners had previously decided to lay off five individuals and that Plaintiff was not part of that list. He then informed Plaintiff that after she missed work on June 21, 2009, the other partners decided to terminate Plaintiff's employment.

23. In that meeting and in a later meeting, Massey told Plaintiff that he may be able to hire her back in six months or so if she had recovered from her condition.

24. As L&C knew, Plaintiff's absences on June 21, 2009 and other days were caused by and necessary because of her disabling condition.

25. Prior to the termination, Massey and L&C had received medical records and other documentation showing Plaintiff's condition, her treatment, and that her absences were a result of her need for time off to seek treatment and to recover from flare-ups of the condition.

26. Nevertheless, L&C went forward with terminating Plaintiff's employment.

27. In the June 24, 2009 meeting, when confronted with the fact that Defendants' termination of Plaintiff's employment violated the Americans with Disabilities Act and the Family and Medical Leave Act, Massey flippantly responded "we've got insurance for that."

28. Plaintiff filed timely Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Arizona Attorney General's Office, Civil Rights Division ("ACRD") and received a notice of right to sue after October 30, 2009.

## COUNT ONE
### (Sexual Harassment in violation of Title VII)

29. Plaintiff incorporates all previous allegations of the Complaint as though set forth fully herein.

30. At all relevant times, L&C was an employer subject to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*

31. At all relevant times, Plaintiff was an employee under Title VII.

32. As described above, L&C subjected Plaintiff to sexual advances and other verbal and physical conduct of a sexual nature through the conduct of Massey.

33. L&C's conduct was unwelcome and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a sexually abusive or hostile work environment.

34. Plaintiff perceived the working environment to be abusive or hostile and a reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

35. As a result of L&C's conduct, Plaintiff has suffered and continues to suffer medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

36. L&C's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against L&C.

## COUNT TWO
### (Disability Discrimination in violation of the ADA)

37. Plaintiff incorporates the previous paragraphs of the Complaint as though set forth fully herein.

38. In or before January 2009, Plaintiff became an individual with a disability under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA") in that she had a mental or physical impairment that substantially limited one or more major life activities.

39. At all relevant times during her employment with L&C, Plaintiff could perform the essential functions of her job with or without a reasonable accommodation.

40. In May 2009, after L&C knew of Plaintiff's disability, Plaintiff requested a reasonable accommodation for her disability by asking for time off as necessary to seek treatment and recover from flare-ups of her disabling condition. L&C refused to engage in the interactive process or otherwise grant Plaintiff's request for a reasonable accommodation.

41. L&C discriminated against Plaintiff in violation of the ADA by denying Plaintiff's request for a reasonable accommodation including intermittent leaves of absence, by failing to engage in the interactive process to determine whether L&C could provide a reasonable accommodation to Plaintiff's disability, by discharging Plaintiff from employment, and by otherwise subjecting Plaintiff to differing terms and conditions of employment, because of her disability.

42. As a result of L&C's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

43. L&C's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against L&C.

## COUNT THREE
## (Denial of Leave/Retaliation in violation of FMLA)

44. Plaintiff incorporates all previous paragraphs of the Complaint as though set forth fully herein.

45. At all relevant times, L&C was an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA").

46. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA.

47. Plaintiff had a serious health condition under the FMLA.

48. Plaintiff's serious health condition intermittently rendered Plaintiff unable to perform the functions of her position for short periods of time.

49. As a result of Plaintiff's serious health condition, Plaintiff needed to take unscheduled and unpredictable intermittent leaves of absence.

50. Plaintiff complied with all legal requirements necessary to be entitled to take medical leave under the FMLA.

51. L&C denied Plaintiff's request for medical leave under the FMLA and terminated Plaintiff's employment because she took leave to which she was entitled under the FMLA.

52. As a result of L&C's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

## COUNT FOUR
## (Battery)

53. Plaintiff incorporates all previous allegations of the Complaint as though set forth fully herein.

54. As described above, Defendants caused offensive contact with Plaintiff.

55. Defendants intended to cause the offensive contact with Plaintiff or to cause apprehension of an immediate offensive contact.

56. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

57. Defendants' conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against Defendants.

## COUNT FIVE
### (Assault)

58. Plaintiff incorporates all previous allegations of the Complaint as though set forth fully herein.

59. As described above, Defendants caused Plaintiff to suffer apprehension of an immediate offensive contact.

60. Defendants intended to cause the offensive contact with Plaintiff or to cause apprehension of an immediate offensive contact.

61. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

62. Defendant's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against Defendants.

WHEREFORE, Plaintiff Cheryl Brumbaugh prays for judgment against Defendants LeBaron & Carroll, LLC and Dewight Massey and Jane Doe Massey, husband and wife, as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct;

C. For an award of liquidated damages under the FMLA;

D. For an award of punitive damages;

E. For an award of attorneys' fees, expert witness fees, and related expenses;

F. For an award of prejudgment and post-judgment interest;

G. For an award of Plaintiff's costs of suit incurred herein; and,

H. For an award of such other relief as the Court may deem just and proper.

DATED this 27th day of January, 2010.

ROBAINA & KRESIN PLLC

By _____
David C. Kresin
Attorneys for Plaintiff